FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 JAN 30  A 10: 37

CLERK'S OFFICE
AT BALTIMORE

_____DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

MICROS SYSTEMS, INC.,                  :
                                       :
                                       :
                                       :
v.                                     : Civil Action No. CCB-01-228
                                       :
                                       :
SHENANGO SYSTEMS SOLUTIONS, INC.,      :
et. al.                                :

## MEMORANDUM

This case arises from a dealer agreement between Micros Systems, Inc. ("Micros") and Shenango Cash Register Co. ("Shenango Cash"). Plaintiff Micros now sues Shenango Systems Solutions, Inc. ("Shenango Systems"), the assignee and successor-in-interest of Shenango Cash, and William Miller, the principal officer of both companies, for failing to pay for goods provided under the agreement. Currently pending are defendants' Motion to Dismiss for Lack of Jurisdiction, plaintiff's Motion to Compel Discovery and for Reasonable Expenses, and plaintiff's Motion for Summary Judgment. The motions have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will deny defendants' motion to dismiss and grant plaintiff's motions for summary judgment and reasonable expenses incurred by defendants' failure to comply with discovery requests.

## BACKGROUND

Micros is engaged in the business of developing and licensing computer hardware and



software for the restaurant, hotel, and entertainment industries. Headquartered in Columbia, Maryland, the company deals both directly with its own customers, and through a network of independent dealers.

In 1986, Micros and one such dealer, Shenango Cash, executed a dealer agreement (the "1986 agreement") authorizing Shenango Cash to purchase Micros technology and distribute the products in western Pennsylvania and eastern Ohio. At the time the agreement was entered, Shenango Cash was a Pennsylvania general partnership, owned and operated by William Miller and Michael Razzo. (*See* Pl. Mot. for Summ. Judgmt., Ex. A, Aff. of W. Miller, ¶2.) In 1989, Mr. Miller acquired all of Shenango Cash and changed its name to Shenango Systems Solutions. (*Id.* at ¶¶ 3, 6.) Shenango Systems became an incorporated entity in January 2000. (*Id.* at ¶ 11.) At all relevant time periods, Mr. Miller, by and through the Shenango companies (however constituted), continued to purchase Micros goods and services pursuant to the 1986 Agreement.

The current action is based on Shenango's failure to pay for purchases from Micros between May 1999 and July 2000. (*See id.*, Aff. of P. Freeman, Ex. A.) On October 17, 2000, Micros filed this action in the Circuit Court for Howard County, Maryland. The action was removed to the district of Maryland in January 2001. On April 3, 2001, this court, upon plaintiff's request, remanded the case because defendants' notice of removal was untimely. In May, defendants removed the case again, this time with plaintiff's consent. As of July 2001, the total amount due and owing under the dealer agreement was $330,558.77.[1] (*See* Pl. Mot. for Sum. Judg. in D. Md., Ex. B, Aff. of D. Roth, ¶3.)

## ANALYSIS

---

[1] In accordance with Micros' policy on overdue payments, this amount includes finance charges of 1.5% per month on all past due amounts. (*See* Pl. Mot. for Sum. Judg. in Howard Cty. Ct., Aff. of P. Freeman, ¶2.)

*1. Personal Jurisdiction*

Personal jurisdiction is "'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Accordingly, the court will resolve the jurisdictional issues raised in defendants' Motion to Dismiss before proceeding to the merits of the case.

When, as in this instance, a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden ultimately rests with the plaintiff to prove, by a preponderance of the evidence, grounds for jurisdiction. *See Mylan Laboratories, Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the issue is decided without an evidentiary hearing, the plaintiff needs only to make a prima facie showing of personal jurisdiction. *See Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676. All pleadings are considered in the light most favorable to the plaintiff, and all inferences are drawn in favor of the existence of jurisdiction. *Id.*

According to plaintiff, jurisdiction is proper because the forum selection clause contained in the 1986 dealer agreement provides that all claims not subject to arbitration must be submitted to the state or federal courts sitting in Maryland.[2] (*See* Pl. Amended Compl., Ex. 1, "Micros Dealer Agreement," § 20(b).) Forum selection provisions are generally valid unless enforcement is "unreasonable under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.*, 696 F.2d 315, 317 (4th

---

[2] Under § 20(a) of the 1986 Dealer Agreement, the arbitration clause applies only to claims by the dealer of improper termination or nonrenewal of the contract. (*See* Pl. Amended Compl., Ex. 1.)

Cir. 1982).[3] A choice of forum clause is unreasonable if (1) it was induced by fraud or overreaching; (2) the movant "will for all practical purposes be deprived of his day in court" because of the unfairness and inconvenience of the selected forum; (3) the chosen law is fundamentally unfair and deprives the plaintiff of a remedy; or (4) enforcing the provision contravenes a strong public policy of the forum state. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).

Shenango Systems does not challenge the validity of the forum selection clause on any of these grounds. Instead, it claims not to be bound by the provision because it was not a signatory to the 1986 agreement between Micros and Shenango Cash. (*See* Def. Mot. to Dism., p. 2, ¶ 3.) For the following reasons, the court rejects defendants' claim.

According to William Miller, owner and operator of both companies during the time of the Micros purchases, Shenango Systems is the same business entity as Shenango Cash, the only differences being a name change and subsequent incorporation.[4] (*See* Pl. Mot. for Sum. Judg. in

---

[3] There is some disagreement about whether the effect of a forum selection clause in a diversity case is governed by federal or state law. Some courts have held that federal law controls because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2nd Cir. 1990) (*citing Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3rd Cir. 1995). In the Fourth Circuit, however, the relevant state law has been applied. *See Eisaman v. Cinema Grill Systems, Inc.*, 87 F.Supp.2d 446, 448 (D. Md. 1999) (*citing Nutter v. New Rents, Inc.*, 945 F.2d 398 (4th Cir. 1991) (unpublished)). Since defendants have not challenged the validity of the forum selection clause, and the standards for evaluating selection provisions in both of the relevant jurisdictions (Maryland and Pennsylvania) are similar to, if not the same as, the federal standard, this distinction does not affect the court's resolution of this case. *See Gilman v. Wheat, First Securities, Inc.*, 692 A.2d 454, 462-63 (Md. 1997) (adopting the federal standard); *Central Contracting Co. v. CE Youngdahl & Co.*, 209 A.2d 810 (Pa. 1965) (forum selection clause should be respected where agreement not unreasonable at the time of the litigation).

[4] In his affidavit, Mr. Miller states:

3.   In 1989, I bought out Michael Razzo's share of the partnership. I became sole proprietor and business remained the same.
     ...
6.   Prior to the beginning of the business year of 1999, the business presently known as Shenango Systems Solutions, Inc., was operating under the name of Shenango Cash

D. Md., Ex. A, Aff. of W. Miller, ¶¶ 3, 6, 7, 11.) The company's ownership, management, and business activities are the same now as they were pre-incorporation. (*Id.*) The company continued to purchase from Micros pursuant to the 1986 agreement signed by Shenango Cash.[5] (*Id.* at ¶¶ 5, 10, 13.) It has even sued Micros in other proceedings to enforce rights under the 1986 agreement, claiming to be the "successor-in-interest and assignee" of Shenango Cash.[6]

---

       Register Company, as a sole proprietorship, owned by me.

7.    At the beginning of the business year of 1999, Shenango Cash Register Company changed its name to Shenango Systems Solutions but it still was operating as a sole proprietorship and still was owned by me. Its business remained the same.

    ...

11.   At the beginning of the business year of 2000, Shenango Systems Solutions was changed from a sole proprietorship to a corporation, Shenango Systems Solutions, Inc. Its ownership remained the same. Its business remained the same.

[5] Mr. Miller further states:

5.    After this ownership change, Micros continued to do business with Shenango Cash Register Company.

    ...

10.   After the name change in 1999 Micros continued to do business with Shenango Systems Solutions.

    ...

13.   After the change to a formal corporate status Micros continued to fill orders orally submitted in the name of Shanango [sic] Systems Solutions, Inc., and cashed payment checks from Shenango Systems Solutions, Inc.

[6] Shenango Systems, in a complaint sworn to by William Miller, states:

    1. Plaintiff, Shenango Systems Solutions, Inc. ["Shenango Systems"] is a Pennsylvania corporation, with its principle [sic] place of business at 554 South Erie Street, Mercer, Pennsylvania.

    2. Shenango Systems is the successor-in-interest to and the assignee of the pertinent contract rights of Shenango Systems Solutions, a sole proprietorship owned and operated by William Miller ["Mr. Miller"], and of Mr. Miller as the owner of that sole proprietorship. Shenango Systems solutions became incorporated as the Plaintiff corporation in the beginning of the business year 2000. However, the company's business remained the same. Mr. Miller is the Chief Executive Officer and sole shareholder of Shenango Systems.

    3. Prior to the beginning of the business year of 1999, the sole proprietorship, which became known as Shenango Systems Solutions, was a business known as an [sic] operating under the name of Shenango Cash Register Company. The name of Shenango Cash Register Company was changed to Shenango Systems Solutions at the beginning of that business year. At the time of that name change, Shenango Cash Register Company also was a sole proprietorship owned and

5

(*See* Pl. Resp. to Def. Suppl. Venue Brief, Ex. A, "Shenango's Amended Compl. in Ct. of Commn. Pl. of Allegheny County, Penn.," ¶¶ 1-3.)

A corporation which acquires the assets of another also acquires its liabilities and debts where "'the successor entity is a mere continuation or reincarnation of the predecessor entity.'" *Academy of IRM v. LVI*, 687 A.2d 669, 677 (Md. 1997) (*quoting Nissen Corp. v. Miller*, 594 A.2d 564, 565-66 (1991)); *see also Simmers v. American Cyanamid Corp.*, 576 A.2d 376 (Pa. Super. 1990). The evidence indisputably establishes that Shenango Systems is an incorporated continuation of Shenango Cash. It is, therefore, bound by the 1986 agreement, which includes the aforementioned forum selection clause, and the court has jurisdiction in this case. For ease of reference, Shenango Systems and Shenango Cash will be referred to collectively as "Shenango" throughout the remainder of this memorandum.

2. *Venue*

Defendants next assert that the court lacks venue under the provisions of the general venue statute, 28 U.S.C. § 1391. In a removed case, however, a party may not use § 1391 to challenge the propriety of venue. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S.663, 665-66 (1953); *see also PT United Can Company, Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2nd Cir. 1998); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 (11th Cir. 1997). The statute governing the venue of a removed case is 28 U.S.C. § 1441, which provides for venue in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see id.* Accordingly, defendants' motion to

---

operated by Mr. Miller. Shenango Systems Solutions and Mr. Miller as its owner were the successors-in-interest to and the assignees of the pertinent contract rights of Shenango Cash Register Company and of Mr. Miller as the owner of that sole proprietorship. The business of Shenango Cash Register Company remained the same after it was changed to Shenango Systems Solutions.

6

dismiss pursuant to § 1391 is denied.

Defendants may, however, still request a discretionary transfer to a more convenient forum under 28 U.S.C. § 1404. Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering a § 1404(a) request, a court examines several case-specific factors, among which the presence of a forum selection clause figures centrally. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Additional factors considered include (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the ease of accessing relevant sources of proof, including the availability of compulsory process; (4) the benefit of having local courts and juries determine local issues of law and fact; and (5) "'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 465 (D. Md. 2000) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The determination of whether to grant a transfer under § 1404(a) is within the sound discretion of the district court, and the movant bears the burden of proof. *Id.* (*citing Quinn v. Bowmar Publishing Co.*, 445 F. Supp. 780, 787 (D. Md. 1978)).

Defendants have not shown that a transfer is warranted in this case. They have not indicated who the relevant witnesses are, or presented any evidence about the inconvenience of producing witnesses or documents in Maryland. *See Roby v. General Tire & Rubber Co.*, 500 F. Supp. 480, 486 (D. Md. 1980) (convenience of witnesses may be the most important and oft-considered factor under 1404(a)) (citations omitted). Nor is there proof that litigation in Maryland has caused or will cause undue inconvenience to defendants. Accordingly, Shenango's motion under 1404(a) is also denied.

7

*3. Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson*, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleadings, however, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp. Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

In deciding whether to grant summary judgment in a case based on a contract's interpretation, a court first must determine whether the contract is unambiguous on its face. *Worldwide Rights Ltd. v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). A writing is

ambiguous if it is susceptible of more than one reasonable interpretation. *Id.* (*citing American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)). If the contract is unambiguous, or if extrinsic evidence makes the proper interpretation clear, the court may interpret the contract as a matter of law. *Id.* If the contract is ambiguous, however, and extrinsic evidence leaves a genuine issue as to the contract's proper determination, summary judgment is inappropriate and the contract's interpretation must be left to the trier of fact. *Id.*

The relevant provisions of the contract before the court are unambiguous. Between May 1999 and July 2000, Shenango purchased and licensed goods and services from Micros and, pursuant to the terms of the 1986 agreement, was expected to pay for what it received. (*See* Pl. Amended Compl., Ex. 1, "Micros Dealer Agreement," §§ 4(j), 5(a)-(c).) To the extent that Shenango was a sole proprietorship when the purchases were made, William Miller, as sole proprietor, is responsible for those purchases as well. *See, e.g., Bushey v. Northern Assurance Co.*, 766 A.2d 598, 603 (Md. 2001) (a sole proprietorship has no legal existence apart from its owner); *Glidden Co. v. Department of Labor & Indus.*, 700 A.2d 555, 558 (Pa. Cmwlth. 1997) (same).

Defendants do not dispute receiving Micros goods and services for which they have not paid. Their only response is to request additional time for discovery because (1) the invoices submitted by Micros have at least two mistakes, and (2) any amount defendants owe may be set off by favorable awards in related Pennsylvania court and/ or arbitration proceedings. (*See* Def. Opp. to Pl. Mot. for Summ. Judgmt., Aff. of W. Miller, ¶¶ 4-8.)

Defendants' request for a postponement of summary judgment will be denied. They have failed to specify the alleged "mistakes" or show more than a *de minimis* amount is involved. Further, the Miller affidavit, submitted by defendants in support of their request, fails to establish

9

that defendants have not already had opportunity to discover this information. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).[7] Moreover, there is no legal authority for defense counsel's suggestion that this court must await the results of a state court or arbitration proceeding before resolving the matter at hand. The court, therefore, grants Micros' request for summary judgment in the amount claimed.

*3. Discovery*

The following facts provide background for plaintiff's Motion to Compel Discovery and subsequent request for reasonable expenses. On April 27, 2001, after the court remanded this case to the Circuit Court for Howard County, defendants were served with interrogatories and document requests. Under the Maryland rules, Shenango's responses would have been due on or about May 30, 2001 -- approximately 30 days after the date of service. By mutual agreement between the parties, the due date was extended to June 21, 2001. (*See* Pl. Mot. to Compel Disc., Ex. 1, Letters Re: Litigation Agreement.) On June 25, 2001, plaintiff's counsel inquired about the past due responses, and, in an email exchange dated June 27, defense counsel pledged to investigate the matter. (*Id.*, Ex. 2, Sternberg/ Tow Email.) After hearing nothing from defendants during the following week, plaintiff filed a motion to compel. On July 11, six days after the motion was filed, plaintiff received unsigned responses to the requests. The signature pages were not mailed until July 20, 2001.

Plaintiff seeks an award for the expense incurred in filing the motion to compel. Specifically, Micros reasonably requests the sum of $348.00, for two hours of legal work,

---

[7] A dispute as to the exact amount owed would not preclude summary judgment regarding defendants' liability under the contract in any event. *See* Fed. R. Civ. P. 56(d); *see also R. Ernest Cohn, D.C., D.A.B.C.O. v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) (district court's refusal to allow additional discovery before granting summary judgment appropriate where discovery sought irrelevant information and court had sufficient information to determine the questions of law).

10

copying, mailing, and filing expenses.[8] Rule 37(a)(4)(A) provides, in relevant part,

> [I]f the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

See Fed. R. Civ. P. 37(a)(4)(A). By inquiring as to the status of the past-due information and providing time for response, plaintiff's counsel made a good faith attempt to obtain the discovery. The burden, therefore, is on defendants to show a substantial justification for the delay. Id.

Defendants argue (1) that the issue is moot since the interrogatories were delivered (albeit after the motion was filed); (2) awarding expenses contravenes the purpose of the discovery rules since all communications between counsel were cordial and made in good faith; and (3) Micros' use of in-house counsel precludes its recovery of expenses. (Def. Opp. to Mot. to Compel, ¶¶ 1-4.) None of these arguments, however, amount to a justification, substantial or otherwise, for the delay. The issue is not mooted by the subsequent delivery of the interrogatories because compliance after the filing of a motion is precisely the situation Rule 37(a)(4)(A) was intended to address. Id. ("[I]f the disclosure or requested discovery is provided after the motion was filed …"). Moreover, fees are recoverable for litigants employing in-house counsel, just as they are

---

[8] Micros computes fees for the two hours of legal work at a market rate of $170 per hour, which, according to the Local Rules, is reasonable for an attorney admitted to the bar for just under eight years. See Local Rules for the District of Maryland, Appendix B, "Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases," 3b.)

11

for those who use attorneys with hourly rates. *Raney v. Federal Bureau of Prisons*, 222 F.3d 927, 934 (Fed. Cir. 2000) (*en banc*) (*citing Textor v. Northern Illinois Univ.*, 711 F.2d 1387, 1397 (7th Cir. 1983)). The court will, therefore, grant plaintiff's request.

A separate Order follows.

1/30/02
Date

Catherine C. Blake
United States District Judge